IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 13, 2002 Session

**TROY DALE BUCKLES v.
SHIRA DAWN McKAY BUCKLES RIGGS**

**Appeal from the Chancery Court for Hawkins County
No. 14402     Thomas R. Frierson, II, Chancellor**

<u>**FILED JANUARY 14, 2003**</u>

**No. E2002-00649-COA-R3-CV**

Shira Dawn McKay Buckles Riggs ("Mother") and Troy Dale Buckles ("Father") were divorced in 1994. Mother was awarded custody of the parties' minor son. In 2001, Father first sought increased visitation and then custody. Mother claimed Father was in arrears in his child support payments. After a trial, the Trial Court concluded there had been no material change in circumstances and custody should, therefore, remain with Mother. The Trial Court determined Father was in arrears in his child support payments in the amount of $13,894. The Trial Court also prohibited both parties from drinking alcohol "while in possession of the child." Father appeals. We modify the judgment to require the parties to undergo counseling, and affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed As Modified; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Douglas T. Jenkins, Rogersville, Tennessee, for the Appellant Troy Dale Buckles.

Daniel B. Minor, Kingsport, Tennessee, for the Appellee Shira Dawn McKay Buckles Riggs.

Paul G. Summers, Attorney General and Reporter, and Warren A. Jasper, Assistant Attorney General, Nashville, Tennessee, for the Appellee State of Tennessee, Department of Human Services *ex rel.* Shira Dawn McKay Buckles Riggs.

# OPINION

## Background

Mother was granted an absolute divorce from Father in 1994. Mother was awarded sole custody of the parties' only child, a son, who is now nine years old. Father was awarded visitation with his son with the following restrictions:

> While exercising his visitations, defendant shall have another suitable person, preferably his sister, drive him while he is exercising his visitations until such time as he presents to the plaintiff a valid Tennessee driver's licence. Defendant shall at all times provide a child seat in his automobile…. Defendant shall not have been drinking any alcohol or taking any mind influencing substances either before or during the time he exercises his visitations with the minor child ….

Father filed a Petition in January of 2001, seeking to have a new visitation schedule agreed to by the parties confirmed by the Court. Father also sought increased visitation. Father later filed a Petition seeking to have Mother held in contempt of court for refusing to allow his visitation with his son. In response, Mother asserted the parties had voluntarily altered the visitation schedule and otherwise denied she was prohibiting Father from exercising visitation. Mother also claimed Father should be denied any further overnight visitation. Father subsequently amended his Petition and sought custody of the child, claiming there had been a material change in circumstances and a change in custody would be in the child's best interest.

Mother filed a request for assistance in obtaining child support with the State of Tennessee's child support enforcement division. The State then filed a Petition for Contempt on Mother's behalf. The State claimed Father was $18,250 in arrears on his child support payments. The State also requested an increase in the amount of child support. The State's petition was consolidated with the present action.

A guardian ad litem ("Guardian") was appointed on behalf of the minor child, per Father's request. Father claimed the child had been physically abused by his step-father. After conducting an investigation into the allegations of abuse, the Guardian prepared a written report concluding the child had not been abused by the step-father. The Guardian also concluded it would be in the child's best interests to remain with Mother. The Guardian went on to recommend:

> That the Father … refrain from drinking any alcohol in the presence of [the child], because it creates one of his primary sources of stress and is not in his best interest. The Guardian … also highly recommends that [Father] refrain from being with [the child] at sports bars and restaurants that serve alcohol for any longer than that time

which is necessary to eat a meal and that those meals be eaten at tables rather than at the bar, because this is another source of conflict and stress for the child that only serves to place the child in the middle of battles such as this one.

Mother testified she and Father divorced in 1994 after one year of marriage. Father was ordered to pay child support in the amount of $50 per week which was to be paid through the court. To Mother's knowledge, no child support was ever paid through the court, although some child support payments were made directly to Mother. Mother acknowledged Father had cancelled checks showing his child support payments totaling $5,756. Mother testified her mother was not being truthful if she claimed to have given Mother child support payments she had received from Father.

Mother admitted she discouraged her son from having a relationship with Father and that she stopped allowing Father visitation. Her reason for this was her fear for the child's safety since Father would take him to bars and drink alcohol while exercising visitation. According to Mother, Father never called and asked for visitation after she stopped allowing visitation. Mother stated she has no problem with Father exercising visitation so long as he does not drink alcohol. Mother testified to her involvement with her son's school activities and the progress he was making. She agreed family counseling was needed, and denied her current husband had in any way harmed her son.

Father acknowledged he was ordered to pay $50 per week into the registry of the court. He went on to testify, however, that instead of paying the child support into court, he paid Mother directly at her request. Father claimed he made all of his required child support payments over the years in cash or from various different bank accounts. Father, however, had no canceled checks prior to April of 1999 showing that any payments had been made.

With regard to the allegations of physical abuse, Father testified his son told him about being kicked by his step-father. Father reported the alleged abuse to the proper authorities. A proceeding then took place in Juvenile Court regarding these allegations. Father claims his son denied any abuse and "told a totally different story in court." Those proceedings then were dismissed. After those proceedings were dismissed, Father claims his son told him he lied in Juvenile Court because Mother said she would whip him until he bled if he told the truth. In light of his son's admission, Father apparently was able to have the Juvenile Court proceeding reopened.

Father denied ever being drunk around his son. He also denied that his drinking of alcohol in any way affected their relationship.

Jerri McKay (McKay) is Mother's mother. McKay testified her grandson spent a lot of time with her up until he was five years old. When Father exercised his visitation rights, he would give his child support payments to McKay when picking up or dropping off the child. In turn, McKay would give the money to Mother. Father would make these payments by cash or check.

McKay admitted she kept no records as to how much child support she had received from Father and given to Mother. McKay claims her grandson told her his step-father had abused him. When this happened, McKay forwarded this information to the authorities. McKay never witnessed any problems between Father and son. The child never appeared to her to be afraid of Father. McKay claimed to have seen bruises on the child which the child indicated were caused by his step-father. When she asked Mother about the bruises, Mother did not seem concerned. McKay stated Mother acknowledged the bruises came from the child's step-father shaking him. McKay described the step-father as very controlling. McKay acknowledged Mother was a fit parent, and she knew of no reason for the child to be taken away from Mother.

Steve Nelson ("Nelson"), an officer with the Rogersville Police Department also testified. Nelson was present on two occasions when the child was being given to Father for visitation. On the first occasion, Nelson went to the scene after someone called the police indicating there was a problem. When he arrived, Mother was irate and Nelson had trouble getting her under control. The child did not want to go with Father. Nelson tried to calm everyone down and the child eventually agreed to go with Father. Nelson then told Mother to get the child's clothes out of her car so they could be given to Father. When she got the clothes, Mother started screaming and cussing. Nelson told her he would arrest her for disorderly conduct if she did not stop. According to Nelson, the second situation was much like the first.

Susan Chambers ("Chambers"), a school counselor at Hawkins County Elementary School, also testified. Chambers testified the parties' child had difficulty getting along with other children and, at one point, was failing a couple of classes. The child would get anxious towards the end of the week when Father was going to exercise visitation. According to Chambers, the child needed a structured environment where rules were followed. Chambers noted the child had been working hard at improving his ability to get along with other children and that his grades had improved, but a "fresh start" would be easier for him. Chambers testified Father's drinking and taking the child to bars was a stressor for the child and needed to stop. According to Chambers, Mother is very active in the child's school activities. To her knowledge, Father has never been to a school function.

Matthew Smith ("Smith"), a New Services Officer with the Hawkins County Juvenile Court was called as a witness for Father. According to Smith, the parties' son told Smith that Mother and his step-father had instructed him to lie about the allegations of abuse. Although the Juvenile Court petition had been dismissed, based on this new information, an *ex parte* order was entered by the Juvenile Court Judge restraining Mother and step-father from threatening or coercing the child as to his testimony.

The next witness was Betty Barrett ("Barrett"), a former child abuse investigator with the Department of Human Services. Barrett investigated the child's allegations that his step-father had hurt him. Barrett interviewed and physically examined the child but found no evidence of abuse. Barrett also interviewed Mother and the step-father. Barrett concluded the allegations of abuse "were absolutely unfounded, as unfounded as any case I ever worked."

The guardian ad litem, Michelle Green ("Green") also testified. Green is an attorney in private practice in Rogersville and previously was an assistant district attorney who, among other things, prosecuted child abuse cases. Green interviewed Father and the child. During the initial interview, the child did not claim he had been kicked. The only person who mentioned this alleged incident was Father. Green interviewed the child several more times. She also interviewed Mother and the step-father, as well as Mother's parents and the child's babysitter. Green concluded there had been no physical abuse. She also concluded the child is "in the middle of a very 'serious tug of war' … between Mother and Father … the child is under so much stress it's not even funny. He tells me he has trouble sleeping. He's got a knot in his neck … because of stress. And he can't lay down and sleep because of it. The fact that his father drinks bothers him …." Green stated the child did not feel safe when his father drank alcohol because the child was not old enough to know how much was too much. During the interviews, the child asked Green repeatedly what he should do if his dad drank too much and whether he should get in the car with him. Green recommended custody remain with Mother. She also stated Father should refrain from drinking alcohol in front of the child. Green suggested if Father and son go out to eat, they should not sit at the bar. Finally, Green strongly recommended counseling for the entire family and noted both parties should refrain from interrogating the child.

The final witness was Thomas Riggs ("Riggs"), the child's step-father. Riggs married Mother in 1995. Riggs has contributed to the child's support ever since he married Mother. Riggs denied ever striking or kicking the child in an inappropriate manner.

As pertinent to this appeal, the Trial Court calculated Father's child support obligation starting February 11, 1994, to be $20,500. The Trial Court then stated the "evidence preponderates in favor of a finding that between February 1994 and April 1999, [Father] sporadically paid [Mother] child support in cash. The evidence also supports a finding that these cash payments totaled $850.00. Beginning in April of 1999 … [Father] paid child support by means of check … [totaling] $5,756.00." After giving Father credit for these payments, the Trial Court concluded Father was $13,894.00 in arrears.

With regard to Father's request for a change in custody, Father claimed there was a material change in circumstances because: (1) Mother had remarried; (2) the home environment with Mother and step-father was not safe; (3) Mother had denied Father visitation; and (4) Father could provide a more structured environment. Addressing these various contentions, the Trial Court stated:

> Remarriage of either parent does not, of itself, constitute a change of circumstances that would warrant a change of custody or parenting time. *Arnold v. Arnold*, 774 S.W.2d 613 (1989). "However, the possible change in home environment caused by such remarriage is a factor to be considered in determining whether or not there has been a material change in circumstances that would warrant an alteration of custody arrangements", *Tortorich v. Erickson*, 675 S.W.2d 190 (1984). As noted above, [Father's] petition filed in the

juvenile court of Hawkins County, Tennessee, was dismissed. The evidence preponderates against a finding that the minor child has sustained any mental or physical abuse by Mr. Riggs. Instead, the evidence supports a finding that [the child] enjoys a positive, healthy and appropriate relationship with his stepfather, Mr. Riggs.

Pursuant to T.C.A. 36-6-106, in any proceeding requiring the trial court to make a custody determination regarding a minor child, the Court may consider as a relevant factor a parent's willingness and ability to facilitate and encourage a close and continuing parent/child relationship between the child and the other parent, all consistent with the best interests of [the] child. A material change of circumstances must be a change in the child's circumstances, and not the circumstances of either or both parents. *Hoalcraft v. Smithson*, 19 S.W.3d 822 (1999). Though [Mother] unilaterally prevented certain parenting time in favor of [Father], such conduct reflected acrimony and a deterioration of the relationship between [Mother and Father], all insufficient to establish a material change of circumstances so as to warrant a modification in the parenting arrangement.

Finally, regarding [Father's] assertion that as [a] parent he can provide a more suitable and structured home environment for the child, [Father] failed to show that a continuation of the adjudicated parenting arrangement will substantially harm the child. Accordingly, this Court concludes that there has not occurred a material change in circumstances since the Final Judgment of Divorce so as to warrant a modification in the primary residential parent status.

\* \* \* \*

A primary concern of [Mother] is [Father's] continuing consumption of alcohol while in the presence of the minor child. The guardian *ad litem* reiterated such concern in her report and testimony during trial. The evidence supports a finding that [Father] consumes alcohol in the presence of the child at various restaurants during parenting time. [Father] also transports the child after having consumed alcohol.… Tennessee courts may impose necessary conditions regarding parenting responsibilities, each designed to promote and protect the best interest of the child. Either party's failure to abide by a court's order regarding prohibited use of alcohol and drugs while in the possession of the child may result in either a change in custody or neither parent receiving custody, *Thompson v. Thompson*, 1995 LEXIS 645 (Tenn. App., 1995). This Court

concludes that an appropriate condition for parenting by both parties is that they are prohibited from using, consuming or permitting the use, by designated caregivers, of alcohol while in possession of the child.

Finally, the Trial Court entered a parenting plan for the parties which vested Mother with the sole authority to make "major" decisions with regard to the child's education, non-emergency health care, religious upbringing, and extracurricular activities.

Father appeals various aspects of the Trial Court's ruling. In particular, Father appeals the Trial Court's refusal to transfer custody of the child to him, as well as the Trial Court's granting to Mother the sole right to make "major" decisions in the child's life. Father appeals the ruling that he was in arrears $13,894 in child support and the prohibition on his consuming any alcohol when exercising visitation. Finally, Father argues the Trial Court erred in failing to order family counseling. The State appeals the amount of child support arrearage, claiming Father was in arrears $20,500.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address the Trial Court's conclusion that there was no material change in circumstances which would warrant a change in custody. In *Kendrick v. Shoemake*, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489 (Tenn. Nov. 1, 2002), our Supreme Court set forth the appropriate standard to be applied when making such a custody determination. Specifically, the Court stated:

The principal issue in this case concerns the proper standard to be applied to a petition to modify custody from one parent to the other parent. This issue is largely resolved by our recent decision in *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002). *Blair* involved a custody dispute between a parent and a non-parent. We concluded that once a valid order of custody has been issued, subsequent custody modification proceedings should apply the "standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." 77 S.W.3d at 148. As explained in *Blair*, the "threshold issue" is whether a material

-7-

change in circumstances has occurred after the initial custody determination. 77 S.W.3d at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id.* (citations omitted). We note that a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being.

*Kendrick*, 2002 Tenn. LEXIS 489 at *7, *8 (footnotes omitted). If a material change in circumstances has been found, then a Trial Court must next determine whether custody modification is in the child's best interests. *Id*. at *9.

Relying on *Wall v. Wall*, 907 S.W.2d 829 (Tenn. Ct. App. 1995), the Trial Court defined "change of circumstances" to require a showing of substantial harm to the child. In *Wall*, this Court stated that an initial custody determination is not "changeable except for 'change of circumstances' which is defined as that which requires a change to prevent substantial harm to the child." *Id*. At 834. In *Kendrick*, however, the Supreme Court did not require a showing of substantial harm in order to establish a material change of circumstances. When making the custody determination in the present case, the Trial Court did not have the benefit of the *Kendrick* opinion released over eight months after the Trial Court's ruling.

Father correctly notes in his brief that "[t]he facts of this case are hotly disputed." The Trial Court's finding that no material change in circumstances existed such as to warrant a change in custody was based upon its observation of the parties at the hearings, and its comparison of the demeanor of all the witnesses, including Father and Mother. Trial courts, when determining custody matters, take into account a number of factors, "including the parents' demeanor and credibility during the . . . proceedings." *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). A trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). The Trial Court concluded there had been no physical abuse of the child, and the child currently enjoyed a "positive, healthy and appropriate relationship with his stepfather…." The evidence does not preponderate against the factual findings made by the Trial Court.

In light of these and other factual findings made by the Trial Court, there is no need to remand this case for a determination of whether or not there has been a material change of circumstances in accordance with the standard set forth in *Kendrick*. It is clear from our Supreme Court's Opinions in *Blair* and *Kendrick* that a showing of risk of substantial harm is not essential to establishing a material change of circumstances. Based on our review of the entire record, and in light of the Trial Court's factual determinations which are not contrary to the preponderance of the evidence, we hold Father did not establish a material change in circumstances. This is so even though he is not required to show that a change in custody is necessary to prevent substantial harm to the child in order to show a material change of circumstances. We, therefore, affirm the Trial Court's refusal to change custody.

The Trial Court's conclusion that Father was $13,894 in arrears also involves a factual determination inasmuch as the child support either was or was not paid. Mother admitted receiving $850 in cash payments and Father clearly proved an additional $5,756 in payments. The Trial Court credited Father with these payments against the total amount of child support owed. Mother denied receiving any further child support payments. Father claimed to have made all payments, although he had no additional documentary proof to support this contention. Had Father paid child support through the court as required by the initial order, this would not have been an issue either at trial or on appeal. Based on the demeanor and credibility of the witnesses, the Trial Court was free to choose to believe Mother's testimony that no additional payments had been received, or to believe Father that all payments had been made. The Trial Court chose to credit the testimony of Mother. We cannot conclude that the preponderance of the evidence is against the factual finding reached by the Trial Court that Father was $13,894 in arrears.

The State argues the Trial Court should have treated the $6,606 credited to Father as a gift because he failed to pay the child support into the court as required by the original order. The State argues Father should be found to be the full $20,500 in arrears. In light of the fact Mother does not deny receiving the $6,606 in child support and that this support was used for necessities in raising the child, we believe the Trial Court properly characterized these sums as child support as opposed to gifts. In short, we affirm the Trial Court's holding that Father was in arrears in the amount of $13,894.

Father claims the Trial Court erred when it allocated to Mother the sole right to make major decisions with regard to the child's education, non-emergency health care, religious upbringing, and extracurricular activities. A Trial Court is vested with the power to allocate parental responsibilities. Among the criteria to consider are:

> (2) The history of participation of each parent in decision making in each of the following areas: physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and whether each parent attended a court ordered parent education seminar;

-9-

(3)  Whether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas:  physical care, emotional stability, intellectual and moral development, health, education, extracurricular activities, and religion; and

(4) The parents' geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

Tenn. Code Ann. § 36-6-407(c)(2)-(4).

On appeal, Father argues the Trial Court was in error because Mother's proven failure to cooperate "mandates his inclusion in the decision making process to promote his relationship with the child and prevent misuse of the mother's decision making power."  While it is true Mother recently has thwarted Father's ability to exercise visitation, Mother's claimed basis for doing so was Father's persistence in drinking alcohol when exercising visitation.  In our opinion, both parties have demonstrated an inability to get along with each other, and the blame does not lie solely with Mother.  The proof shows Mother has been the primary decision maker on these various topics.  Further, proof in the record shows that the parties have demonstrated their lack of ability and desire to cooperate with one another in decision making regarding the child.  We do not believe the Trial Court erred in holding that Mother should continue to make these major decisions in this child's life.

Father takes issue with the Trial Court's prohibiting his drinking any alcohol while exercising visitation.  Father admits the Trial Court had the authority to mandate such a prohibition.  He argues, however, that the Trial Court erred because the ruling came about simply because of Mother's "campaign for total temperance."  From the facts set forth at length above, it is undeniable that Father's drinking causes a significant amount of stress in his son's life.  Regardless of whether or not Mother is on a "campaign for total temperance," because of the negative effect Father's drinking has on this child, the facts undeniably show that having both parents abstain from drinking alcohol when in possession of the child is in the child's best interest.  On appeal, Father does not argue otherwise.  In light of the foregoing, we believe the Trial Court was correct in its ruling on this issue.  We note that as the child gets older, there may well come a time when this restriction is no longer necessary, and Father is free to request modification or elimination of this prohibition at that time.

The final issue on appeal is Father's argument that the Trial Court erred in not requiring the parties to undergo counseling.  The Trial Court did not address whether or not counseling was appropriate.  On appeal, Mother does not argue counseling is not needed.  If fact, she does not address this issue.  At trial, about the only thing the parties could agree on was that counseling was needed.  We agree.  The Trial Court's judgment is modified so as to require the parties to undergo counseling.  Therefore, on remand, the Trial Court is instructed to enter an order requiring the parties and their son to obtain appropriate counseling.

## Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for such further proceedings as may be required consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Troy Dale Buckles, and his surety.

_____
D. MICHAEL SWINEY, JUDGE