IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2005 Session

## EDWARD EARL DeWERFF v. CHRISTINE CONNIE DeWERFF (now HAND)

**Direct Appeal from the Chancery Court for Montgomery County**
**No. 2000-07-0016    C. L. Rogers, Judge**

**No. M2004-01283-COA-R3-CV - Filed August 31, 2005**

The trial court denied Father's petition to decrease child support upon finding Father was voluntarily underemployed. It also determined Father's previous payments of child support in excess of the court ordered amount were a gift and refused to credit them to Father's subsequent arrearage. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Larry B. Watson, Clarksville, Tennessee, for the appellant, Edward Earl Dewerff.

Thomas R. Meeks, Clarksville, Tennessee, for the appellee, Christine Connie Dewerff Hand.

### OPINION

The parties to this action, Edward Earl Dewerff (Mr. Dewerff) and Christine Connie Dewerff (now Hand)(Ms. Hand), were divorced in October 2000. They have one minor child. At the time of the divorce, Mr. Dewerff's child support obligation was set at $2,150 per month. Beginning April 2001, this amount was reduced to $1,400 based on the trial court's award of increased visitation to Mr. Dewerff. However, Mr. Dewerff continued to pay the previously ordered $2,150 per month through October 2002. In November 2002, he paid the court-ordered amount of $1,400. Thereafter, he paid less than the court-ordered amount.

Meanwhile, in August 2002, Mr. Dewerff began closing down his law practice in anticipation of relocating to Kentucky in order to remarry. Mr. Dewerff asserts that his decision to relocate was based on his fiancee's inability to relocate because of an order in her decree of divorce prohibiting her from moving out of a three-county area in northern Kentucky. In March 2003, Mr. Dewerff

moved to Kentucky and took a position as a public defender at a salary of approximately $33,000 per year.

In May 2003, Mr. Dewerff filed an amended petition for modification of parenting plan. In his petition, Ms. Dewerff sought a reduction of his child support obligation based on a reduction in income. Ms. Hand counter-petitioned in July 2003, seeking an increase in child support and asserting Mr. Dewerff was voluntarily underemployed. The trial court heard the matter in March 2004. While this matter was pending, in February 2004, Mr. Dewerff moved back to Clarksville to practice law and began commuting to Kentucky on the weekends. In February 2004, his income was between $2,000 and $3,000 per month.

The trial court determined that amounts paid by Mr. Dewerff from April 2001 through October 2002 in excess of court-ordered child support of $1400 were a gift. Thus, the court refused to credit the excess payment amounts to subsequent child support arrearages. The court also determined that Mr. Dewerff was intentionally voluntarily underemployed. On April 21, 2004, the trial court entered an order for arrearages in the amount of $15,213. It found Mr. Dewerff had not exercised visitation rights as awarded by the court, and increased Mr. Dewerff's child support obligation to $2,150 per month. The trial court awarded Ms. Hand her attorney's fees. Mr. Dewerff filed a timely notice of appeal to this Court.

## Issues Presented

On appeal, Mr. Dewerff raises the following issues for our review:

(1)     Whether the trial court erred in finding that overpayments of child support by Appellant were a "gift" and therefore not allowing a credit against child support arrearages.

(2)     Whether the trial court erred in refusing to reduce Appellant's child support obligation by finding Appellant was "intentionally voluntarily under employed" for the purpose of avoiding his child support obligation.

(3)     Whether the trial court erred in awarding Appellee's attorney's fees.

## Standard of Review

We review the trial court's findings of fact *de novo*, with a presumption of correctness. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). We will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, appellate courts will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v.*

*Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

## Child Support Arrearage

The parties do not dispute that Mr. Dewerff made payments to Ms. Hand of $2,150 per month from May 2001 through October 2002, or that this amount was in excess of the court- ordered amount of $1,400 per month. Mr. Dewerff asserts, however, that the overpayments were not a gift, but were made because Ms. Hand insisted on payments of $2,150 and interfered with visitation otherwise. Mr. Dewerff asserts that payments made in excess of his court-ordered obligation should be credited to him to offset subsequent arrearages. He contends that the amount in arrears is, therefore, $847 and not $15,213.[1] Ms. Hand, however, asserts that Mr. Dewerff did not intend the overpayments to be pre-paid child support at the time they were made. At trial, she testified that, in April 2001, Mr. Dewerff told her he was going to pay the additional $750 per month because it was the right thing to do morally and that he never indicated that the additional amount was anything but a gift. Ms. Hand also denies that she interfered with Mr. Dewerff's visitation with the parties' child, and submits Mr. Dewerff did not exercise the increased visitation awarded him by the trial court in April 2001.

The trial court found that Mr. Dewerff had voluntarily elected to pay extra amounts in support of his child and that amounts above $1400 per month were "unequivocally a gift." It further found that only after Mr. Dewerff had "voluntarily got[ten] himself into a financial bind" by abandoning his law practice to relocate to Kentucky did he indicate to Ms. Hand that the extra payments were to be used as a credit against future child support. The trial court also found that Mr. Dewerff had failed to exercise visitation as awarded by the court and set child support at $2150 per month.

Mr. Dewerff cites *Koehler v. Koehler*, 559 S.W.2d 944 (Tenn. Ct. App. 1977), for the proposition that an obligor parent who has overpaid child support is entitled to a credit against child support arrearage. (Brief at 9) He also cites *Buckels v. Riggs*, 106 S.W.3d 668 (Tenn. Ct. App. 2003) and *State v. Springs*, 976 S.W.2d 654 (Tenn. Ct. App. 1997) in support of his contention that the overpayments should not be considered a gift. We disagree.

---

[1]In the argument section of his brief to this Court, Mr. Dewerff also contends Ms. Hand did not seek arrearages in her pleadings and is estopped from asserting them at trial. Ms. Hand submits that, under *Rutledge v. Barrett*, 802 S.W.2d 604 (Tenn. 1991) equitable principles do not apply to child support arrearage cases. She additionally contends that the issue of whether the overpayment amounts would be credited to off-set arrearages was within the contemplation of the parties at the time of the hearing and that Mr. Dewerff's attorney noted it as a key issue in his opening statement to the trial court. However, Mr. Dewerff did not raise the issue of estoppel as an issue in his statement of the issues. We may consider an issue waived where it is argued in the brief but not designated as an issue. *Childress v. Union Realty Co.*, Ltd., 97 S.W.3d 573, 578 (Tenn. Ct. App.2002). Accordingly, we decline to address the issue of estoppel here.

Certainly, the court may credit an obligor parent's overpayments against arrearages in some circumstances. *Koehler*, 559 S.W.2d at 950. However, *Koehler* does not stand for the proposition that additional amounts paid in support of a child are prepayments which may be credited against arrearages in all instances. We note, moreover, that *Koehler* primarily addressed the Tennessee court's jurisdiction under the Reciprocal Enforcement of Support Act and did not discuss whether, under the facts of that case, the prior payments in excess of the court-ordered amount should be considered gifts.

*Buckles v. Riggs* and *State v. Springs* likewise are not particularly helpful in the case now before us. In *Buckles*, Father was ordered to pay child support of $50 per week into the registry of the court. *Buckles*, 106 S.W.3d at 672. However, when he exercised his visitation rights Father paid his child support payments to Mother's mother ("Grandmother"), with whom the child spent a considerable amount of time. *Id.* Grandmother did not keep records of how much Father paid. *Id.* The State asserted that Father was $20,500 in arrears and argued that amounts paid to Mother via Grandmother should have been considered a gift because the payments were not made to the court as ordered. *Id.* at 677. However, in *Buckles*, Father did not pay amounts in excess of that ordered by the court or argue that amounts paid directly to Mother were pre-payments. Despite the fact that Father paid support directly to Mother/Grandmother rather than through the court as ordered, because Mother did not deny receiving $6,606 in support, the trial court determined Father was $13,894 and not $20,500 in arrears. *Id.* We concluded that the evidence did not preponderate against the court's determination. *Id.* at 677. In *State v. Springs*, we affirmed the trial court's determination that Father was not entitled to a credit against back child support for amounts he expended to purchase a motor bike for his son. We concluded that there was no proof that the motor bike was a necessity not being furnished by Mother. *Springs*, 976 S.W.2d at 658.

Obligor parents may be given a credit against their child support obligation for amounts paid on behalf of their child when those payments are for necessities that the custodial parent either refused or failed to provide. *E.g., Peychek v. Rutherford*, No. W2003-01805-COA-R3-JV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004) (*no perm. app. filed*). In order to successfully assert a claim that such payments were necessary, the claiming party must demonstrate that the child needed the goods or services provided; that the custodial parent had a legal obligation to provide the goods or services; that the custodial parent failed to provide the goods or services; and the cost of those goods or services. *Id.* Likewise, we hold that a party asserting that payments knowingly made in excess of his/her child support obligation were intended to be prepayments has the burden of demonstrating that such intent existed at the time the payment was made and that such intent was communicated to the obligee parent. In this case, we cannot say the evidence preponderates against the trial court's determination that amounts paid by Mr. Dewerff in excess of his court-ordered child support obligation were a gift to his child.

**Voluntary Underemployment**

The parties do not dispute that Mr. Dewerff voluntarily abandoned a law practice which provided an income of approximately $188,000 per year in order to relocate to Kentucky, where his

income fell to approximately $33,000 per year. The trial court found that, under the facts of this case, Mr. Dewerff was voluntarily underemployed. Mr. Dewerff, however, asserts he is not voluntarily underemployed and that his decrease in income results from his remarriage and not from an effort to avoid child support.

Whether a party is willfully and voluntarily underemployed is a fact-intensive inquiry, and the trial court has considerable discretion in its determination. *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001)(citations omitted). In making its determination, the trial court must consider the party's past and present employment and whether the party's choice to accept a lower paying job was reasonable and made in good faith. *Id.* However, the courts are inclined to find willful and voluntary underemployment when a party with a child support obligation voluntarily leaves employment and chooses to accept a job which provides significantly less income. Additionally, the courts have determined that a party's testimony that he/she has the ability to earn a greater income constitutes evidence of willful underemployment. *Id.* This court has held, moreover, that a finding of "willfulness" does not require a finding that the obligor chose to become under or unemployed to intentionally avoid child support obligations. *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Although we are not insensitive to a person's right to pursue happiness and to make reasonable employment choices, an obligor parent will not be allowed to reduce his child support obligation as a result of voluntarily choosing to work at a lower paying job. *Willis*, 62 S.W.3d at 738.

In this case, Mr. Dewerff voluntarily chose to abandon a successful legal practice in order to relocate to another state for purely personal reasons. Although we are not insensitive to Mr. Dewerff's decision to remarry, we cannot say his employment decision was reasonable in light of his pre-existing obligation to support his minor child. The evidence in this case does not preponderate against the trial court's determination that Mr. Dewerff is voluntarily underemployed.

**Attorney's Fees**

We finally turn to whether the trial court erred in awarding Ms. Hand her attorney's fees. In his brief to this Court, Mr. Dewerff's argues only that an award of attorney's fees is inappropriate if this Court reduces the arrearage amount and remands the case to the trial court for a recalculation of his child support obligation. In light of the foregoing, this issue is moot.

**Holding**

We affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the Appellant, Edward Earl Dewerff, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE