# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### SUBMITTED ON BRIEFS JULY 20, 2011

## JARED AJANI LIMA v. MARCIA GABRIEL LIMA

Direct Appeal from the Chancery Court for Madison County
No. 64920      James F. Butler, Chancellor

No. W2010-02027-COA-R3-CV - Filed August 9, 2011

This appeal involves parental relocation. Mother intended to relocate from Tennessee to Las Vegas with the parties' two children in order to accept another position with her current employer. Father filed a petition opposing the relocation and seeking modification of the parenting plan to be named primary residential parent. The trial court found that the parties were not spending substantially equal intervals of time with the children, and that the move had a reasonable purpose. Therefore, it permitted Mother to relocate with the children pursuant to Tennessee Code Annotated section 36-6-108. Father raises numerous issues on appeal. For the following reasons, we affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

G. Michael Casey, Jackson, Tennessee, for the appellant, Jared Ajani Lima

No appearance on behalf of the appellee, Marcia Gabriel Lima

## OPINION

## I. FACTS & PROCEDURAL HISTORY

Jared Lima ("Father") and Marcia Lima ("Mother") moved to Tennessee from New York in 2005. They divorced in March of 2009, when their two daughters were ages nine and six. Mother was designated primary residential parent and given 230 days of residential parenting time with the children each year. Father was awarded 135 days of residential parenting time, which would consist of the two days per week when Father was not working, certain holidays, and four weeks during the summer. The parenting plan also provided that the parties would work together to provide Father with "extra time" with the children when he had time off work.

On June 17, 2010, Mother sent a letter to Father, informing him that she would be relocating to Las Vegas, Nevada with the children and that their last day in Jackson, Tennessee would be June 22. The letter stated that Mother had accepted a new position with her employer and that she was enclosing a copy of a letter from her employer that would explain the "short notice."

On June 21, 2010, Father filed a "Complaint to Prevent Parental Relocation and to Modify Permanent Parenting Plan" in the Chancery Court of Madison County. Father alleged that a material change in circumstances had occurred and that it was in the children's best interest that he be named primary residential parent. Specifically, he alleged that Mother had notified him that she intended to move with the children to Las Vegas, and that he had been exercising more parenting time with the children than provided in the parenting plan due to a change in his employment. Father submitted a proposed parenting plan, and he also sought a temporary restraining order that would prohibit Mother from moving the children out of the court's jurisdiction.

The trial court subsequently entered a temporary restraining order preventing Mother from moving the children outside the court's jurisdiction pending further orders of the court. Mother proceeded with her move to Las Vegas, Nevada, and the children resided with Father pending further proceedings. Mother filed a response to Father's complaint to prevent parental relocation and to modify the parenting plan, in which Mother admitted that the parenting plan should be modified due to a material change in circumstances, but denied that Father was exercising more parenting time than that provided in the parenting plan. Among other things, Mother alleged that she had complied with the notice provision of the parental relocation statute, Tenn. Code Ann. § 36-6-108, that she should remain the primary residential parent, and that she should be permitted to relocate with the children. She submitted a proposed parenting plan as well.

On August 10, 2010, the trial court heard testimony from eight witnesses. Thereafter, the court entered a final order in which it found that Mother and Father were not spending substantially equal intervals of time with the children and that there was a reasonable purpose for Mother's move to Las Vegas. As such, the court permitted Mother to relocate to Las Vegas with the children and adopted her proposed parenting plan. The court dismissed Father's complaint to prevent relocation and to modify the parenting plan. It also awarded Mother her attorney's fees. Father timely filed a notice of appeal.

## II. ISSUES PRESENTED

Father presents the following issues, slightly restated, for review on appeal:

1.  Whether the trial court erred in granting relief to Mother when she failed to file a petition to alter visitation pursuant to Tennessee Code Annotated section 36-6-108(b) or other pleading requesting relief;
2.  Whether the trial court erred by not allowing Father to present evidence regarding the applicable statutory factors pursuant to Tennessee Code Annotated section 36-6-108;
3.  Whether the trial court erred in allowing Mother to relocate with the children when she failed to provide proper notice of her intent to relocate pursuant to Tennessee Code Annotated section 36-6-108(a);
4.  Whether the trial court erred in finding that the parents do not spend a substantially equal amount of parenting time with the children;
5.  Whether the trial court erred in finding a reasonable purpose for Mother's move;
6.  Whether the trial court erred in failing to grant Father's petition to modify the parenting plan and failing to name him primary residential parent;
7.  Whether the trial court erred in deciding to award Mother her attorney's fees and in awarding an excessive amount;
8.  Whether the trial court erred in failing to award Father his attorney's fees; and
9.  Whether Father should be awarded attorney's fees on appeal.

For the following reasons, we affirm the decision of the chancery court in all respects and deny Father's request for attorney's fees on appeal.

## III. STANDARD OF REVIEW

In child custody cases, we review a trial court's findings of fact de novo upon the record and presume the findings are correct, unless the preponderance of the evidence is otherwise. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App.

2005). Appellate courts are reluctant to second-guess a trial court's custody decision where so much depends on the trial court's assessment of the witnesses' credibility. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Steen v. Steen*, 61 S.W.3d 324, 328 (Tenn. Ct. App. 2001). "Custody decisions often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings." *Joiner v. Griffith*, No. M2004-02601-COA-R3-CV, 2006 WL 2135441, at *2 (Tenn. Ct. App. July 31, 2006) (citing *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)). Unlike this Court, trial courts are in a position to observe the witnesses and to assess their credibility. *Keisling v. Keisling*, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005); *Buckles v. Riggs*, 106 S.W.3d 668, 676 (Tenn. Ct. App. 2003). If no error in the trial court's ruling is evident from the record, the ruling must stand. *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

## IV.  DISCUSSION

"In 1998, our state legislature enacted Tennessee Code Annotated section 36-6-108, which applies when a parent seeks to relocate outside the state or more than 100 miles away from the other parent residing within the state." *Kawatra v. Kawatra*, 182 S.W.3d 800, 802 (Tenn. 2005). The statute was enacted to provide consistency in relocation proceedings. *Helton v. Helton*, No. M2002-02792-COA-R3-CV, 2004 WL 63478, at *4 (Tenn. Ct. App. Jan. 13, 2004). It provides that a parent who desires to relocate shall send notice by mail to the other parent of his or her intent to move at least sixty days prior to the move unless excused by a court for exigent circumstances. **Tenn. Code Ann. § 36-6-108(a).** The notice must contain the location of the proposed new residence, reasons for the proposed relocation, and a statement that the other parent may file a petition in opposition to the move within thirty days. *Id.* In the event no petition in opposition to the proposed relocation is filed within thirty days of receipt of the notice, the parent proposing to relocate with the child shall be permitted to do so. **Tenn. Code Ann. § 36-6-108(g).**

Under the statute, the appropriate standard to be applied when the other parent does file a petition in opposition to removal of the child depends upon whether the parents actually spend substantially equal amounts of time with the child. Thus, the trial court must first decide whether the parents are "actually spending substantially equal intervals of time with the child." **Tenn. Code Ann. § 36-6-108(c), (d).** If they do, no presumption in favor of or against relocation arises, and the court decides the petition to relocate on the basis of the child's best interest. **Tenn. Code Ann. § 36-6-108(c).** "The approach differs if the parents are 'not actually spending substantially equal intervals of time with the child.'" *Kawatra*, 182 S.W.3d at 802. The statute "reflects a legislatively mandated presumption in favor of relocating custodial parents who spend 'the greater amount of time with the child.'" *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. Sept. 14, 2001). If the parent who seeks to relocate with the child spends the greater amount of

time with the child, the court "shall" permit the relocation *unless* the other parent can establish that the relocation: 1) does not have a reasonable purpose; 2) poses a threat of specific and serious harm to the child that outweighs the threat of harm from a change of custody; or 3) is due to a vindictive motive in that it is intended to defeat or deter visitation rights of the other parent. **Tenn. Code Ann. § 36-6-108(d).** The parent opposing the relocation bears the burden of proof to establish one of these three grounds, and if he or she fails to do so, the relocation shall be permitted. *In re Iyana R.W.*, No. E2010-00114-COA-R3-JV, 2011 WL 2348458, at *3 (Tenn. Ct. App. Jun. 8, 2011) (citing *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App. Dec. 20, 2003)). If one of these three circumstances is shown, the court then proceeds to a best interest analysis. **Tenn. Code Ann. § 36-6-108(e).**

### A. Considering the Issue of Relocation

Father's first argument on appeal is that the trial court erred in considering the issue of relocation and allowing Mother to move because Mother failed to file a pleading requesting relief. As previously discussed, shortly after Mother sent Father the letter informing him of her intent to relocate, Father filed a "Complaint to Prevent Parental Relocation and to Modify Permanent Parenting Plan." Mother then filed a response to Father's complaint, in which she basically argued that Father's complaint should be dismissed, that she should remain primary residential parent, that she should be permitted to relocate with the children, and that the trial court should adopt the proposed parenting plan that she submitted along with her response. At the beginning of the final hearing before the trial court, Father's attorney argued that because Mother had not filed a petition to alter visitation, the parental relocation statute was not "triggered," and the court should not even hold a hearing on the issue of relocation. The trial judge stated that it was Father who "pulled the trigger" on the issue by filing the "Complaint to Prevent Parental Relocation," and he stated that he intended to hear the case on the merits due to the interests of the children involved.

We find no error in the trial court's decision. The pleading filed by Father, coupled with Mother's response, squarely presented the issues contemplated by the relocation statute. *See* **Connell v. Connell**, No. 03A01-9808-CV-00282, 2000 WL 122204, at *5 (Tenn. Ct. App. E.S. Jan. 25, 2000). Father argues that Mother was required to file a "petition to alter visitation" pursuant to Tennessee Code Annotated section 36-6-108(b), but subsection (b) applies "where there is no objection to a parent's relocation but the parents do not agree on visitation and support." **Cundiff v. Cundiff**, No. M2007-01538-COA-R3-CV, 2009 WL 454217, at *3 (Tenn. Ct. App. Feb. 23, 2009). Because Father filed a petition in opposition to removal of the child, as contemplated by the relocation statute, and Mother filed a response, we find no reversible error in the trial court's consideration and resolution of the

issue.

## B.    Failure to Allow Evidence

Father's second issue is somewhat perplexing.  He argues that the trial court erred "by not allowing [him] to present evidence at the final hearing regarding parental relocation and the standards of proof required[.]"  Father states that it was "implicit in the trial court's statements that the court was not considering the provisions of Section 36-6-108 because [Mother] had failed to file a Petition seeking relief."  We disagree.  As previously discussed, the trial judge stated that he was there to consider Father's petition to prevent relocation and that he intended to proceed with hearing the case on the merits due to the interests of the children.  At the conclusion of Father's argument that the issue of relocation should not be considered, the trial judge stated that he intended to "go ahead and hear the case, and we'll move forward and you can note your exception."  Counsel for Father then stated that the court would have to decide whether the parties were spending substantially equal time with the children in order to decide whether part (c) or part (d) of the relocation statute applied.  The trial judge responded by stating that according to the parties' parenting plan, this "would be a (d) case unless the father is able to prove or show that he has had the . . . children substantially equal time."  Father then called his first witness without further discussion or objection.  We find no support for Father's argument on appeal that he was "not allowed to put on evidence of which part should apply under the facts and circumstances of the present case."  Father testified regarding the amount of time that he and Mother spent with the children, and his attorney questioned numerous other witnesses about the issue as well.  Therefore, Father's argument that he was not allowed to present evidence at the final hearing is without merit.

## C.    Notice of Intent to Relocate

Next, Father argues that the trial court should not have allowed Mother to relocate with the children due to deficiencies in the notice she provided prior to her relocation.  Father points out that Mother's letter was sent only five days before she intended to move with the children, when the statute requires sixty days' notice, and that her letter failed to inform him of the location of her proposed new residence or of the fact that he could file a petition in opposition to the move within thirty days.

Mother testified that she could not provide sixty days' notice of her move because she was required to begin work in Las Vegas within two weeks of being informed that she had been accepted for the position.  Father does not cite any cases which hold that deficiencies in the required notice require a trial court to deny permission to relocate, nor have we encountered any.  Here, the trial court entered a restraining order preventing Mother from

moving with the children while the case was pending, and the court's ultimate decision to allow Mother to move with the children was rendered more than sixty days after Father received the letter. In addition, Father exercised his right to file a petition in opposition to the relocation despite Mother's failure to inform him of his right to do so. Finally, we note that Mother's letter did inform Father that she intended to move to Las Vegas, and at trial, she provided her current address. Thus, it does not appear that Father was prejudiced by any deficiencies in Mother's notice of her intent to relocate, and we find no reversible error due to these alleged deficiencies. *See **Graham v. Graham***, No. E2004-02247-COA-R3-CV, 2005 WL 1467878, at \*4 n.3 (Tenn. Ct. App. Jun. 22, 2005) (finding that a mother's initial failure to provide notice prior to moving was "cured" by subsequently providing additional information and due to the fact that the father had availed himself of the right to file a petition objecting to relocation).

### D.    *Substantially Equal Time*

Next, Father argues that the trial court erred in concluding that he and Mother were *not* "actually spending substantially equal intervals of time" with the children. *See* **Tenn. Code Ann. § 36-6-108(c), (d).**

The relocation statute does not define what constitutes "actually spending substantially equal intervals of time," and the courts have not provided bright-line rules for deciding the issue. ***Collins v. Coode***, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at \*3 (Tenn. Ct. App. Apr. 27, 2004)). Courts have declined to adopt bright-line rules "because custody decisions, by their very nature, are inherently fact-dependent." *Id.* We have also stated that the common meaning of the phrase "substantially equal" is easily understood:

> The word "substantially" means "essentially," "to all intents and purposes," or "in regard to everything material." 17 OXFORD ENGLISH DICTIONARY 68 (2d ed. 1989). Thus, the plain meaning of the term "substantially equal" connotes a relationship that is very close to equality – so close that it may be considered equal.

*Id.*

Our Supreme Court has explained that when determining whether the parties in a relocation case are actually spending substantially equal intervals of time with their children, the number of days to be credited to each parent should be based upon an examination of the residential parenting schedule and adjustments for any violations to the residential schedule or for additional time not reflected in the residential schedule. *Kawatra*, 182 S.W.3d at 801-802. Because the statute requires consideration of time "actually spent," the parenting plan itself "does not necessarily establish the time spent if there is evidence there was substantial

deviation from that arrangement." **Helton**, 2004 WL 63478, at *7.

Here, the parenting plan provided that Mother would have 230 days of residential time with the children and that Father would have 135 days. Although the parenting plan provided that Father would have the children "two days per week when [Father] is not working," Father testified at trial that during the past six months,[1] he had picked the children up from school on Tuesday afternoons and kept them until Thursday morning, and "on some occasions," he had kept the children from Tuesday afternoon until Friday morning. In other words, Father testified that sometimes he had the children two nights per week and sometimes he had them three nights per week. Father later testified that he "primarily" and "consistently" had the children on Tuesday, Wednesday, and Thursday nights each week, but he conceded that the schedule varied and that he did not always have the children on Thursday nights. Mother, on the other hand, testified that it was the parties' general practice for Father to pick the children up from school on Tuesday afternoons and keep them only until Thursday morning. Regarding Father's testimony that he had the children on some Fridays, Mother testified, "I don't know why he's saying that." She denied that Father ever kept the children from Tuesday until Friday morning. In sum, Mother testified that Father only had the children for two days per week, as provided by the parenting plan, and no more.

In its final order, the trial court made the following findings, which we deem relevant to this issue:

> There was a dispute about the number of days during the week Father had responsibility for the children. Father said it was often three days and Mother said it was never three days, but at the most two days.
>
> . . . .
>
> The Court notes the proof and testimony is sharply disputed, particularly as to the level of involvement of each party with the children since the divorce. As a result, the Court has been required to engage in credibility determinations of the parties and decide which part[y's] testimony is more persuasive and more in line with the other facts of the case which are not in dispute. The Court also had the opportunity to observe the parties in their testimony and during the trial.
>
> . . . .
>
> Assuming the parties had the number of "days" provided for in the PPP, Mother had care of the children for 63.1% of the available time and Father had 36.9%. As a result, the court finds that the parents are not actually spending

---

[1] "[W]hen circumstances permit, the comparison period should be the twelve consecutive months immediately preceding the relocation hearing." **Kawatra**, 182 S.W.3d at 804.

substantially equal intervals of time with the children. Thus, as to the relocation issues, this case falls under Subsection (d) of Tennessee Code Annotated § 36-6-108.

Father argues on appeal that the trial court simply relied upon the terms of the parenting plan and failed to consider the amount of time that the parties were "actually" spending with the children. He argues that "considering [his] testimony that he had kept the children three days per week during the previous six (6) months prior to trial, [he] would have spent nearly fifty percent (50%) of the time with the parties' children." We disagree with both of these assertions. From our review of the trial court's order and the circumstances of this case, it appears that the judge simply credited Mother's testimony that the children were only residing with Father for two nights per week as provided in the permanent parenting plan. The judge recognized at the beginning of the final hearing that, according to the parties' parenting plan, this "would be a (d) case *unless* the father is able to prove or show that he has had the . . . children substantially equal time." (emphasis added). As such, we disagree with Father's suggestion that the trial court failed to consider the "time actually spent" by each parent with the children.

Moreover, we find that even if Father's trial testimony is taken as true, it does not establish that the parties were spending substantially equal intervals of time with the children. Although Father claimed to have liberal visitation with the children two and sometimes three nights per week, it did not rise to "substantially equal" intervals of time, considering that every week, Mother always had the children the greater amount of time. Simply put, we do not consider Father's two to three night schedule to be "so close that it may be considered equal" to Mother's four to five night schedule. *See Collins*, 2004 WL 904097, at *3. Therefore, the trial court's finding that the parties were not actually spending substantially equal intervals of time with the children is affirmed.

### E. Reasonable Purpose

Next, Father argues that the trial court erred in finding a reasonable purpose for Mother's move to Las Vegas.[2] "[D]eterminations concerning whether a proposed move has a reasonable purpose are fact-intensive and require a thorough examination of the unique

---

[2] As explained above, under subsection (d) of the relocation statute, a parent who spends the greater amount of time with the child shall be permitted to relocate unless the court finds that the relocation: 1) does not have a reasonable purpose; 2) poses a threat of specific and serious harm to the child that outweighs the threat of harm from a change of custody; or 3) is due to a vindictive motive in that it is intended to defeat or deter visitation rights of the other parent. **Tenn. Code Ann. § 36-6-108(d).** Here, Father does not argue that either of the two latter circumstances apply, and the trial court found that they did not. Father limits his argument to whether Mother's move was for a reasonable purpose.

circumstances of each case." *In re Spencer E.*, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at *11 (Tenn. Ct. App. Jan. 20, 2011). Again, there are no bright-line rules with regard to circumstances or factors that constitute a reasonable purpose for a proposed relocation. *In re H.L.B-K.*, No. M2010-00561-COA-R3-JV, 2010 WL 4940586, at *3 (Tenn. Ct. App. Nov. 30, 2010). "An increase in pay is a factor to be considered when determining whether there is a reasonable purpose for the proposed relocation; however, that factor, without more, may be insufficient." *Slaton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *3 (Tenn. Ct. App. Oct. 24, 2005). "Other relevant economic factors that are typically considered include, without limitation, the relative significance of the increase, the cost of living in the proposed location compared to the present location, the firmness of the job offer, opportunity for career advancement and economic betterment of the family unit." *Id.* (citing *Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *3 (Tenn. Ct. App. June 27, 2005); *O'Bannon v. O'Bannon*, No. E2002-02553-COA-R3-CV, 2003 WL 22734673, at *2 (Tenn. Ct. App. Nov. 20, 2003)).

Here, the parties had moved to Jackson, Tennessee, from New York in 2005. Mother had been a stay-at-home mother throughout the marriage, until the parties separated in 2007. Shortly thereafter, she began working for her current employer, a collection agency. Mother testified that she was promoted to manager in December of 2008, and that she had been required to work longer hours since that time. Subsequently, she applied for the position in Las Vegas, which was also a management position. Mother testified that in Jackson, she was generally scheduled to work from 7:30 a.m. to 5:30 p.m., but on two weekdays, she worked from 12:30 p.m. to 10:30 p.m., and she also worked for four-hour "half days" on Saturdays and on Sundays. Mother testified that in Las Vegas, she was working from 7:30 a.m. to 5:00 p.m. on Mondays, 7:30 a.m. to 6:00 p.m. on Tuesdays and Thursdays, 11:30 a.m. to 8:00 p.m. on Wednesdays, and 12:00 p.m. to 6:00 p.m. on Fridays. Mother testified that her new job was less stressful due to her new work schedule and co-workers. Mother testified that her salary in Jackson was $33,000 per year plus bonuses. Although her initial salary in Las Vegas was also $33,000, Mother testified that she had already received a raise to $35,000, and that she receives higher bonuses in Las Vegas than she did in Jackson due to a different bonus incentive structure. Mother also testified that there was an open Director position in the Las Vegas office, to which she hoped to be promoted within three months because she had the most tenure and experience, and that such a promotion would include "a very big raise." Finally, Mother testified that in Las Vegas, she would be closer to her mother and siblings, who had recently moved from Jackson, Tennessee to Phoenix, Arizona.

Father argues on appeal that these facts do not demonstrate a reasonable purpose for Mother's move. He notes that Mother presented no evidence, besides her own testimony, to prove that she had received a raise, and he claims that she has a mere "hope" of being promoted to the Director position. However, the burden was not on Mother to prove the

reasonableness of her planned relocation; to the contrary, the burden was upon Father to establish that the relocation was not for a reasonable purpose. *See Mann v. Mann*, 299 S.W.3d 69, 74 (Tenn. Ct. App. 2009). We note that Father again claims that "[b]ecause the trial court did not allow [him] to present evidence on the standard of review or parental relocation, the court did not consider the relative cost of living in Las Vegas, Nevada, as compared to that in Jackson, Tennessee." However, as we have already stated, there is nothing in the record to support Father's claim that he was not allowed to present evidence at the final hearing.[3] Considering the entire record, we cannot say that the evidence preponderates against the trial court's determination that Father failed to prove that Mother's move lacked a reasonable purpose. Because no ground existed upon which to deny Mother's relocation, we affirm the trial court's decision to permit her to relocate with the children and to dismiss Father's complaint to prevent relocation.

## F.    Father's Petition to Modify

Father's next argument is that the trial court erred in failing to grant his petition to modify the parenting plan. Father argues that a material change in circumstances has occurred and that it is in the children's best interest that he be named primary residential parent. He points to his evidence that he had been more involved with the children and kept them three days per week during the six months prior to the hearing, and that he kept the children exclusively during the proceedings below after Mother moved to Las Vegas. We agree with the trial court's finding that Father failed to demonstrate a material change in circumstances sufficient to justify changing the designation of primary residential parent. We also note that Mother's relocation to Las Vegas cannot serve as the basis for Father's asserted material change in circumstances. *See Winans v. Winans*, No. M2004-02566-COA-R3-CV, 2006 WL 1865027, at *7-8 (Tenn. Ct. App. Jun. 30, 2006); *Warren v. Warren*, No. W1999-02108-COA-R3-CV, 2001 WL 277965, at *5 (Tenn. Ct. App. Mar. 12, 2001). As explained in *Price v. Bright*, No. E2003-02738-COA-R3-CV, 2005 WL 166955, at *12 (Tenn. Ct. App. Jan. 26, 2005):

> If [Father] is arguing that the [] Court now should make a separate best interests of the child determination based upon a material change of

---

[3] In fact, Father's attorney stated during closing arguments, "And, of course, we don't have before us today a Petition to relocate the children, so we didn't address all of the parental relocation issues. And we can come back and litigate those later. . . . That's why we didn't go through all of those factors[.]" However, prior to the beginning of the hearing, the trial court had heard Father's argument that the relocation statute was inapplicable, and after indicating his disagreement, the judge had made it clear that he intended to proceed with hearing the case. Therefore, we conclude that Father had the opportunity to present evidence at the hearing, and he simply failed to do so. We find no support for his claim that he was "not allowed" to present evidence.

-11-

circumstances with that material change of circumstances being [Mother's] court approved relocation to [Las Vegas], that position is totally without merit. To adopt [Father's] position that a relocation approved by a court pursuant to Tenn. Code Ann. § 36-6-108(d) is a material change of circumstances requiring a best interests of the child determination would be to read into sub-section (d) a best interests determination requirement that our Legislature chose not to include. It is not the role of this Court to amend by judicial order a statute enacted by our Legislature.

A finding that a proposed move has a reasonable purpose "eliminates any argument that such a move is a change of circumstances 'which makes a change in custody in the child's best interests.'" *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *7 (Tenn. Ct. App. Dec. 30, 2003) (quoting *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). Accordingly, we affirm the trial court's decision to dismiss Father's petition to modify.

## G. Attorney's Fees

Finally, Father argues that the trial court erred in deciding to award Mother her attorney's fees and in awarding an excessive amount of attorney's fees to Mother. He argues that the trial court should have awarded him his attorney's fees, and that he should be awarded attorney's fees on appeal.

Tennessee Code Annotated section 36-6-108(i) provides that "[e]ither parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." Thus, we review the trial court's decision to award such fees under the abuse of discretion standard. *In re H.L.B-K.*, 2010 WL 4940586, at *6. "Under this standard, we are required to uphold the trial court's ruling 'as long as reasonable minds could disagree about its correctness,' and 'we are not permitted to substitute our judgment for that of the trial court.'" *Id.* (quoting *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007)).

Here, the trial court awarded Mother $3,050 in attorney's fees. We are unable to conclude that the trial court abused its discretion in making such an award or in denying Father's request for attorney's fees. Exercising our discretion, we also decline to award Father his attorney's fees on appeal.

## V.   CONCLUSION

In conclusion, Tennessee Code Annotated section 36-6-108 requires that Mother be permitted to relocate with the children to Las Vegas because she spends the greater amount of time with the children, and Father did not establish that the move lacked a reasonable purpose, posed a threat of serious and specific harm to the children, or was due to a vindictive motive.  This result should not be construed as a negative reflection of Father's parenting ability, as both Mother and Father clearly love and support their children.  Under the facts of this case and the applicable statute, however, there are no grounds to deny Mother permission to move with the children.  We therefore affirm the decision of the chancery court.  Father's request for attorney's fees on appeal is respectfully denied.  Costs of this appeal are taxed to the appellant, Jared Lima, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.