IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 23, 2009 Session

## JOEY CONNER v. CARMEN CONNER

**Direct Appeal from the Chancery Court for Haywood County**
**No. 11718     George R. Ellis, Chancellor**

_____

**No. W2008-02254-COA-R3-CV - Filed November 9, 2009**

_____

After Mother and Father divorced, a parenting plan was entered designating Father as the primary custodian of the parties' minor child. Mother filed a petition to modify, alleging several grounds, including excessive corporal punishment. The trial court initially found no material change in circumstances, but named Mother primary custodian, based on the minor child's preference. Father appealed, and this Court remanded, finding that the court's ruling was premature. On remand, the trial court, again, awarded custody to Mother, finding the following material changes in circumstance: 1) Mother's remarriage and having had two other children; 2) Mother's completion of her undergraduate degree, her work towards a Master's degree, and having a stable job; 3) Mother's having left the national guard; and 4) the minor child's preference to live with Mother. We affirm the trial court's modification of custody.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jennifer Twyman King, Jackson, TN, for Appellant

Felicia Corbin Johnson, Memphis, TN, for Appellee

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

On September 10, 1998, Joey Conner ("Father") and Carmen Conner ("Mother") were divorced in the Chancery Court of Haywood County, Tennessee.  The parties were granted joint custody of their minor child, Sharron (d.o.b. 7/2/95), with Father being the primary custodian. Sharron was to reside with Father during the week and attend school in Haywood County, and spend weekends with Mother in Shelby County.  Mother was ordered to pay thirty dollars per week in child support to Father.

Mother filed a Petition to Modify Custody on March 9, 2000, alleging that the parties had privately agreed that when Sharron "reached the age of first grade, that custody primary, would be given to the mother, who would then place the child i[n] Shelby County Schools."  Father answered by denying the existence of any agreement to transfer custody to Mother.  Along with his Answer, Father simultaneously filed a Petition to Cite Defendant for Contempt, alleging that Mother was in arrears on her child support payments, and had contributed nothing towards Sharron's medical expenses.  On May 25, 2000, the chancery court entered an Order denying Mother's request to modify custody, and finding that Mother had failed to pay child support as ordered.[1]  On January 8, 2002, the chancery court entered a Permanent Parenting Plan, which provided that Father would be the primary residential parent, with Mother having Thursday and alternate weekend visitation.[2]

Father, on November 29, 2004, filed a Petition for Contempt, to Increase Child Support and for Modification of Previous Order of the Court.  Father alleged, among other things, that Mother's income had increased since entry of the child support Order, and that Mother's paramours were spending the night while Sharron was present.[3]

On October 27, 2005, the chancery court ordered the parties to submit to a custodial/psychological evaluation by Dr. Robert Kennon.[4]

Again, on January 12, 2006, Mother filed a Petition to modify custody.  Mother alleged that both Father and his current wife, Kim Conner, had imposed excessive corporal punishment in disciplining Sharron, and Mother cited two specific incidents: January 20, 2005, and October 17, 2005.  As additional grounds for modification, Mother claimed that because of his work schedule,

---

[1] The trial court ordered Mother to pay $2,130.00 to purge herself of contempt.  It further ordered Mother to pay $50.00 per week in child support, plus a clerk's fee of 5% for a total of $52.50 per week.

[2] The parties agree that the January 8, 2002 Permanent Parenting Plan designated Father as primary residential parent; however, our review of the plan reveals no express indication of such.

[3] This allegation was later dismissed.

[4] The parties agreed to submit to a custodial evaluation.  When Mother's counsel failed to appear at a hearing concerning the evaluation, the trial court selected Father's preferred psychologist, Dr. Kennon.

Father spent very little time with Sharron during the week, and she also claimed that Father prevented Sharron from participating in extra-curricular activities.

A bench trial was conducted over August 22, 2006, November 27, 2006, and May 8-9, 2007. The chancery court entered an Order on July 23, 2007, finding that although Mother had not demonstrated a material change in circumstances to modify the existing parenting plan, because Sharron's preference was to live with Mother, Mother should be named the primary residential parent. The chancery court further ordered Father to pay Mother $547.00 per month in child support. An Amended Permanent Parenting Plan Order was entered on July 23, 2007, reflecting the court-ordered change in custody.[5]

Both Father and Mother appealed to this Court on July 30, 2007 and August 22, 2007, respectively. Oral argument was heard before this Court on April 22, 2008. An opinion was issued on May 29, 2008, in which we vacated the decision of the chancery court and remanded for further proceedings, finding that the chancery court had prematurely ruled on the modification petition, without allowing Father to cross-examine Mother or to testify, himself.[6] On remand, further proceedings were held on August 20, 2008. Thereafter, on September 25, 2008, an Order was entered designating Mother as the primary residential parent.[7] The Order stated, in part:

> 1. The Court finds that there has been a material change in circumstance to warrant a modification of custody and designates [Mother] as the custodial parent of the minor child with [Father] having parenting time with the child every other weekend and the holidays as set out by the shared parenting arrangement.
>
> 2. The Court finds that the Court had concern about [Mother] on April 28, 2000, due to the Mother having a history of changing residences since the parties' divorce, changing jobs, work and school schedules, demands of military service in the National Guard, and that she had not established a stable lifestyle at that time.
>
> 3. The Court finds that a change in circumstances are [sic] that [Mother] has remarried, has two other children, has completed her undergraduate degree, is working on her Master's degree, and has a stable job at Vanderbilt Hospital. The Court further finds that [Mother] has left the National Guard and will no longer have the demands of military service upon her.

_____

[5] Father did not seek a stay of the trial court's order. The child has resided with Mother since July of 2007.

[6] In our opinion, we explained that a child's custodial preference, alone, is insufficient to warrant a change in custody. We instructed that, on remand, the chancery court should apply the legal standard on material change of circumstances set forth in *Boyer v. Heimermann*, 238 S.W.3d 249 (Tenn. Ct. App. 2007).

[7] The Order relied upon the previous testimony of August 22, 2006, and May 8-9, 2007. The transcript from the August 20, 2008 proceedings was attached to the Order and incorporated therein by reference.

4. The Court further finds that the child stated that she wanted to live with [Mother].

On October 3, 2008, Father, again, filed a Notice of Appeal to this Court.

## II. ISSUES PRESENTED

Father has timely filed his notice of appeal and presents the following issues for review, summarized as follows:

1.  Whether the trial court erred in finding a material change in circumstance warranting a custody modification;

2.  Whether the trial court erred in allowing testimony about statements made by the minor child; and

3.  Whether a modification of the Permanent Parenting Plan was in the minor child's best interest.

For the following reasons, we affirm the chancery court's custody modification.

## III. STANDARD OF REVIEW

> Although appellate courts are reluctant to second-guess custody decisions when so much depends on the trial court's assessment of the witnesses' credibility, *Nelson v. Nelson*, 66 S.W.3d 396, 901 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996), we will reverse or modify a trial court's custody decision if we conclude the decision rests on an error of law, or if the evidence preponderates against the finding that there has or has not been a material change in the child's circumstances or that the child's best interests will be served by changing an existing custody arrangement. *Steen v. Steen*, 61 S.W.3d 324, 328 (Tenn. Ct. App. 2001); *Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997).

*Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *2 (Tenn. Ct. App. Feb. 28, 2007).

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes

-4-

no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION
### A. Testimony of the Minor Child

On appeal, Father alleges that the trial court erred in allowing witnesses to testify about statements allegedly made by Sharron regarding her custodial preference, as this testimony was hearsay because Sharron did not testify. We find admissible all references to statements made by Sharron contained within the reports of Drs. Keenon and Pickering, as neither party raised hearsay as an objection to the reports' admission into evidence.[8] *See Ray v. Ray*, No. M2003-01158-COA-R3-CV, 2004 WL 1114578, at *20 n.4 (Tenn. Ct. App. May 18, 2004) (finding hearsay objection waived where party failed to timely object to admission of psychological report containing hearsay).

We need not consider the admissibility of the testimony of other witnesses regarding Sharron's statements. Even if we were to find such testimony inadmissible, the trial court had ample evidence in the expert reports from which it could consider Sharron's custodial preference.

### B. Material Change in Circumstance

"A custody decision, once final, is *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made[.]" *Scofield*, 2007 WL 624351, at *3 (citing *Young v. Smith*, 246 S.W.2d 93, 95 (Tenn. 1952); *Steen*, 61 S.W.3d at 327; *Solima v. Solima*, 7 S.W.3d 30, 32 (Tenn. Ct. App. 1998); *Long v. Long*, 488 S.W.2d 729, 731-32 (Tenn. Ct. App. 1972)). However, because children's and parents' circumstances change, our courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Id.* (citing Tenn. Code Ann. § 36-6-101(a)(1); *see Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

Modification of an existing custody or visitation arrangement involves a two-step analysis. *See Boyer*, 238 S.W.3d at 255. First, the parent attempting to modify the existing custody or visitation arrangement must prove that a material change in circumstances has occurred. *See Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002)). "[N]ot all changes in the circumstances of the parties and the child warrant a change in custody." *Cosner*, 2008 WL 3892024,

---

[8] Mother filed motions to exclude and to strike the testimony and reports of Dr. Pickering for various reasons; none of which was hearsay. Mother's motions were overruled. Dr. Pickering's report was entered into evidence, and he also testified at trial. We need not determine the admissibility of Dr. Pickering's trial testimony concerning statements made by Sharron, as his trial testimony revealed nothing outside of his written report.

at *4. "There are no hard and fast rules for when there has been a change of circumstances sufficient to justify a change in custody." **Id.** (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003)). The decision turns on the facts of each case. **Scofield**, 2007 WL 624351, at *4. However, to determine whether a material change in circumstance has occurred, the court should consider whether: "(1) the change occurred after the entry of the order sought to be modified; (2) the changed circumstances were not reasonably anticipated when the underlying decree was entered, and (3) the change is one that affects the child's well-being in a meaningful way." **Cosner**, 2008 WL 3892024, at *4 (citing *Kendrick*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002); *Cranston*, 106 S.W.3d at 644).[9] "The presence of the word 'material' indicates that the change must be significant." **Patterson v. Patterson**, No. W1999-01544-COA-R3-CV, 2000 WL 33774558, at *3 (citing Black's Law Dictionary 991 (7th ed. 1999)). "If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not re-examine the comparative fitness of the parents, *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999), or engage in a 'best interests of the child' analysis. Rather, in the absence of proof of a material change in the child's circumstances, the trial court should simply decline to change custody." **Oliver v. Oliver**, No. M2002-02880-COA-R3-CV, 2004 WL 892536, at *3 (citing *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999)).

Incorporated into its Order Granting Modification of Custody is the transcript of the trial court's ruling from the bench, where the judge stated that

> After hearing this petition of August the 22nd of 2006, May the 8th of 2007, May the 9th of 2007, and today [August 20, 2008], the Court is convinced that there has been a material change in circumstances based on - - The first hearing, the Court had a great deal of concern about [Mother]. The unrefuted proof was that she had a history of changing residence since the divorce, changing jobs, work and school schedules and that she had not established a stable lifestyle at that time. This was 4/27/00. Also during the many hearings, the Court became aware that [Mother] . . . had joined the National Guard and that the demands of military service would provide a difficult

---

[9] Over the years, the Tennessee Supreme Court ha[d] consistently declined to review this court's decisions holding that the changed circumstances that will trigger a consideration of a change in custody must involve changes in the child's circumstances rather than in either or both of the parents' circumstances. *Steen v. Steen*, 61 S.W.3d at 327; *Hoalcraft v. Smithson*, 19 S.W.3d at 829. The Court has now decided that a change in either parent's circumstances can also trigger a change of custody if the change "affects the child's well-being." *Kendrick v. Shoemake*, 90 S.W.3d at 570. While a change in the custodial parent's circumstances necessarily affects the child, a change in the noncustodial parent's circumstances may not. Because the court did not explicitly limit *Kendrick v. Shoemake* to changes in the custodial parent's circumstances, we must presume that the court now envisions that changes in a noncustodial parent's circumstances can justify a change of custody if the non-custodial parent can demonstrate that the change in his or her circumstances somehow affects the child.

*Oliver*, 2004 WL 892536, at *3 n.3.

job for being the custodial parent, however, the change of circumstances are that [Mother] . . . is married and has two other children, has completed her undergraduate degree and is working on her Master's degree and has a stable job at Vanderbilt Hospital and that she has left the National Guard, and so the demands of military service will no longer be upon her. One of the concerns is, going on the record, that [Mother] had to leave the United States to serve in Iraq for a period of time, which would absolutely preclude her from taking care of this minor child.

In its Order, the trial court also noted Sharron's expressed desire to live with Mother.[10] We note that Mother raised the alleged abuse by Father as a material change in circumstance in her petition to modify custody; however, the trial court did not explicitly find the alleged abuse to be a material change.[11]

Initially, a trial was conducted over three days in this matter. On remand, a fourth day of testimony was held. Thus, the trial court record contains lengthy testimony concerning the modification of custody. After a thorough review of the evidence before the trial court, we find that the evidence does not preponderate against the trial court's finding that Mother has proved a material change in circumstance.

On remand, the trial court listed Mother's remarriage and her having had two other children as one of several material changes in circumstance warranting a modification of custody. This Court has stated that "[r]emarriage, by itself, is not the sort of change in circumstances that triggers a re-examination of an existing custody arrangement because remarriage is such a common occurrence in contemporary society that it can reasonably be anticipated when parties divorce." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *4 (Tenn. Ct. App. Nov. 25, 2003) (citing *Buckles v. Riggs*, 106 S.W.3d 668, 674 (Tenn. Ct. App. 2003); *Smithson v. Eatherly*, No. 01A01-9806-CV-00314, 1999 WL 548586, at *5 (Tenn. Ct. App. July 29, 1999)). In fact, statistics show that seventy-five percent of divorced persons remarry. *Smithson*, 1999 WL 548586, at *5 (citing Thomas Espenshade, *Marriage Trends in America: Estimates, Implication, and Underlying Causes*, 11 Population & Dev. R. 193 (1985)). "However, changes in the home environment brought about by a later marriage may amount to a material change in circumstances if they materially affect the child or the child's parents." *McEvoy*, 2003 WL 22794521, at *4 (citing *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *3 (Tenn. Ct. App. Sept. 14, 2001); *McCain v. Grim*, No. 01A01-9711-CH-00634, 1999 WL 820216, at *3 (Tenn. Ct. App. Oct. 15, 1999); *Tortorich v. Erickson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984)). "[D]ivorced parents should not

[10]Although the minor child's custodial preference was listed separately from the material changes in circumstance, it seems the trial court intended to include such preference among the material changes in circumstance.

[11] On appeal, Mother points only to Father's alleged abuse and his refusal to allow Sharron to participate in ballet classes as material changes in circumstance.

be permitted to upset an existing custody arrangement simply because one or both of them have married again or because the custodial parent and his or her new spouse have started a new family." *Smithson*, 1999 WL 548586, at *5. "Parents seeking to alter an existing custody arrangement must offer some specific evidence concerning how the later marriage or the birth of new children have or will have an adverse affect on the child before the courts will undertake a new comparative fitness analysis." *Id.*

Sharron was born in July of 1995 when Mother was eighteen years old. Mother and Father married in 1997, and were divorced in 1998. Father married Stepmother in January of 2000. The parties entered into the parenting plan at issue in 2002. Under that plan, Father was named the primary residential parent, and Mother was allowed visitation each Thursday and on alternating weekends. The parties also alternated holidays, and every two weeks during the summer.

At trial, Mother testified that when the parties divorced in 1998, she was living in Memphis and Father was living in Brownsville. However, in 2000, Mother moved back to Brownsville. In January of 2006, Mother filed her petition to modify custody. In April of 2006, she remarried, and in October of 2006, she moved to Murfreesboro, apparently to take a job at Vanderbilt University Hospital as an administrative assistant. At some point subsequent to the entry of the 2002 parenting plan, Mother had two more children. Following Mother's move to Murfreesboro, she continued to exercise her visitation with Sharron. Grandmother testified that Sharron stayed with her on Thursday nights, and Mother testified that on her weekends, she drove from her job in Nashville to Brownsville on Friday afternoon and stayed in Brownsville at her parents' home with Sharron until Sunday night. Sharron then spent Sunday night with Mother's parents, who took her to school on Monday morning.

The trial court also found, on remand, as material changes in circumstance, that Mother had completed her undergraduate degree, had begun working on her Master's degree, and had a stable job at Vanderbilt Hospital. In its ruling from the bench, the trial court stated "The unrefuted proof was that [Mother] had a history of changing residence since the divorce, changing jobs, work and school schedules and that she had not established a stable lifestyle at that time. This was 4/27/00." At trial, Mother stated that she "makes more money than [she] made [when the parenting plan was entered]," and that at entry of the plan, she "didn't have the type of finances that [she has] now." Although Mother conceded at trial that she had "been in college or some form of school since before and after th[e] parenting plan was entered in 2002[,]" the record reveals that since entry, she had in fact completed her undergraduate degree, and begun working on an advanced degree, which allowed Mother to earn an increased income.

The trial court also found that Mother's having left the national guard was a material change in circumstance. Mother joined the army national guard in 2000. She continued to live in Brownsville until February of 2003, when she was deployed to Iraq. During Mother's deployment,

Sharron resided with Father, although Mother's father, at times, visited with Sharron.[12] Mother served on active duty in Iraq until June of 2004, when she returned to Brownsville. Upon returning to Brownsville, Mother began commuting to Memphis to work. In May of 2006, Mother was transferred from the army national guard to the army reserve.[13] She explained her responsibilities with the army reserve as attending drill training one weekend per month, and two weeks per summer in Millington, Tennessee–approximately fifty miles from Brownsville. Mother testified that during her training, she was not required to stay overnight. Therefore, she stayed at Grandmother's home in Brownsville and simply drove to Millington each morning. However, in May of 2008, Mother's eight-year contract ended, and she left the military. Mother claims, and the trial court agreed, that her having left the military constituted a material change in circumstances.

The middle section of this Court addressed a similar situation in ***Scofield v. Scofield***, No. M2006-00350-COA-R3-CV, 2007 WL 624351 (Tenn. Ct. App. Feb. 28, 2007). In *Scofield*, the father was a career officer with the United States Army. ***Id***. at *1. In 2003, when the parties divorced, the family resided together in Huntsville, Alabama, where the father was deployed at the Redstone Arsenal. ***Id.*** In the parties' parenting plan, the mother was designated as the primary residential parent of the parties' three minor children, and the father was granted standard visitation. ***Id.*** In the spring of 2005, the father decided to retire from the Army "so that he could make Huntsville his permanent residence." ***Id.*** Alleging several material changes in circumstance, including his retirement and alleged excessive corporal punishment by the mother, the father filed a petition to modify custody. ***Id.*** The trial court found that although the father's impending retirement, which afforded him a permanent residence, constituted a change in the father's life, it did not affect the children's well-being in a meaningful way, such that it constituted a material change in circumstance. ***Id.*** at *4. In affirming the trial court's dismissal of the father's petition, the middle section stated as follows:

> Here, Father asserts a change in his residential situation, whereby he can now permanently reside in Huntsville. Our Supreme Court, however, has found that a move and improvement in one parent's residence, *without more*, does not constitute a material change of circumstances. *Blair*, 77 S.W.3d at 150-51. The mere fact a parent settles down and plans to remain in one location does not necessarily affect the child's well-being in a meaningful way. There must be more–meaning proof the change in the parent's life will have a substantial effect on the child's well-being. *Blair*, 77 S.W.3d at 150-51; *Solima* [*v. Solima*] 77 S.W.3d [30,] 32 [(Tenn. Ct. App. 1998)].

***Id.*** (emphasis added).

---

[12] Grandmother was also deployed to Iraq during this time.

[13] Mother explained the difference between the army national guard and the army reserve as the guard being state and the reserve, federal.

Finally, the trial court found that Sharron's stated preference to live with Mother was a material change in circumstance. In his report, Dr. Kennon stated that "[o]n three separate interviews, Sharron expressed her desire to reside with her mother." Dr. Pickering reported that Sharron vacillated concerning who she wanted to live with, but "[m]ost of the time" stated that she preferred to live with Mother. The trial court apparently placed great weight on Sharron's alleged expressed preference. In its oral ruling, the trial court stated that "The statement [to Dr. Pickering] by the little girl, which was so probing, was the fact that she felt like this was the time in her life that she needed to be with the female parent to help her with female issues that face every female."[14]

"This Court has previously held that the stated preference of a child, standing alone, does not constitute a material change in circumstances." **Conner v. Conner**, No. W2007-01711-COA-R3-CV, 2008 WL 2219255, at *3 (Tenn. Ct. App. May 29, 2008) (citing *Mulkey v. Mulkey*, No. E2004-00590-COA-R3-CV, 2004 WL 2412610, at *5 (Tenn. Ct. App. Oct. 28, 2004)). However, such preference coupled with other circumstances, may amount to a material change in circumstances. *Id.*

We find that Mother's remarriage and having had two other children, Mother's completion of her undergraduate degree, work towards a Master's degree, and having a stable job, Mother's having left the national guard, and the minor child's preference to live with Mother, when considered in the aggregate, support the trial court's finding of a material change in circumstance since entry of the parenting plan. Mother's newfound ability to financially support Sharron, to provide a stable home environment without threat of deployment, and Sharron's expressed desire to reside with her female parent during her teenage years, constitute changes which affect Sharron in a meaningful way. Having so found, we need not address Mother's contention that Father's alleged abuse of Sharron as well as his refusal to allow her to participate in extracurricular activities are additional material changes in circumstance.

### C. Best Interest of the Child

If the petitioner makes a prima facie case of a material change in circumstances then the court must determine whether a change in custody is in the best interest of the child. **In re J.C.S.**, No. M2008-02049-COA-R3-PT, 2008 WL 2924982, at *6 (Tenn. Ct. App. July 28, 2008). This determination requires consideration of a number of factors, including those set forth in Tennessee Code Annotated section 36-6-106 to make an initial custody determination, and Tennessee Code Annotated section 36-6-404 to fashion a residential schedule. *Id.*

Neither the trial court's "Order Granting Modification of Custody," nor its oral ruling incorporated into such, demonstrate that the trial court undertook a best interest analysis. However,

---

[14] In his brief, Father claims that Dr. Pickering made no such statement; however, we note that this statement is found in both his trial testimony as well as in his report.

in the interest of judicial economy, and to further prevent further delay in this case, we will address whether a modification of custody is in the child's best interest.

On appeal, Father contends that the statutory factors do not support a finding that it is in the child's best interest to modify the custody arrangement. We disagree. After reviewing each of the factors, we find that the evidence supports the trial court's decision to name Mother primary residential parent. Although most of the factors do not favor one parent over the other, certain factors do favor Mother. Specifically, Sharron's preference to live with Mother, along with Sharron's expressed feelings of "intimidation and fear" due to Father's disciplinary style, weigh in favor of Mother. Accordingly, we find that a modification of custody is in the best interest of the child.

## V.   CONCLUSION

For the aforementioned reasons, we affirm the trial court's modification of custody. Costs of this appeal are taxed to Appellant, Joey Conner, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.