IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 15, 2011 Session

**IN RE ANNIA J.**

**Appeal from the Juvenile Court for Rutherford County**
**No. 6916C      Donna Scott Davenport, Judge**

**No. M2010-02236-COA-R3-JV - Filed January 11, 2012**

The trial court modified a previous custody order and named father the primary residential
parent. We conclude that the trial court erred in finding a material change in circumstances.
Therefore, we reverse the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR.
and RICHARD H. DINKINS, JJ., joined.

Jonathan Lynn Miley, Nashville, Tennessee, for the appellant, Kerri B.

Robert John Foy, Murfreesboro, Tennessee, for the appellee, Timmy J.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Timmy J. ("Father") and Kerri B. ("Mother") are the parents of a daughter, Annia J.,
born in October 1999.

Mother filed a petition in Sumner County Juvenile Court in January 2002 to establish
paternity and set child support. In March 2002, Father filed a dependency petition against
Mother regarding the child in the same court; he asked that the court award him custody of
the child. At a hearing on the dependency petition, the parties agreed that Father should be
granted visitation; the court awarded Father visitation with the child on alternating weekends
and specified holidays. The paternity petition came before the court in September 2002, and

Father was declared to be the child's father. He was granted "reasonable visitation" and was ordered to pay child support.

A hearing was held in March 2003 on Father's show cause order requesting that the court set visitation. In an order entered on April 2, 2003, the court set out a specific schedule allowing Father visitation on alternating holidays and every other weekend. The case was back before the court on July 23, 2003, on a show cause petition regarding visitation. The parties informed the court that they could resolve the matter between themselves. In an order entered on August 4, 2003, the court dismissed the show cause and "allow[ed] the parties to work out visitation." The order further provides that "visitation between the child and the father shall be as agreed to by the parties from time to time and the father shall give the mother no less than 24 hours prior notice in the event visitation will not occur as agreed."

In January 2008, Father filed a request to transfer the case to Rutherford County, Tennessee, and the case was transferred by order entered on June 26, 2008.

The current dispute originated in August 2008 when Father filed a petition to modify the residential parenting schedule to grant him custody of the child. He alleged that there had been a material change in circumstances since the April 2003 order based on Mother's numerous residential moves, her failure and/or inability to provide the child with adequate care and supervision, use of illegal drugs, and financial difficulties rendering her unable to provide the child with a safe and stable home. Mother denied the material allegations of Father's complaint and filed a counter-petition for a review of child support, an award for outstanding medical expenses, and a restraining order.

The matter was heard before a juvenile court referee over three days in June and July 2009. The referee entered an order on August 14, 2009, finding no material change in circumstances to justify a change in custody since the August 2003 order and denying Father's petition for a change in custody. The referee reinstated the parenting schedule set forth in the Sumner County juvenile court order of April 2, 2003, and added several provisions applicable to school breaks. Father's child support obligation was also modified. Father moved for a rehearing before a juvenile court judge.

The de novo hearing before the juvenile court judge occurred over three days in February, July, and August 2010. The court found a substantial and material change of circumstances and designated Father as the primary residential parent.

On appeal, Mother raises several issues, which we summarize as follows: (1) Whether the trial court erred in finding a material change of circumstances justifying a change in custody. (2) Whether the trial court erred in changing custody without conducting the

appropriate analysis of the best interests of the child. (3) Whether the trial court based its credibility determination on facts outside the scope of review. (4) Whether the trial court violated Mother's rights by applying a double standard in allowing evidence to be presented by the two parties.

ANALYSIS

(1)

In cases involving custody and visitation, our review of the trial court's findings of fact is de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). When the trial court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies. *Kendrick*, 90 S.W.3d at 570.

Determinations regarding custody and visitation "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). Moreover, trial courts necessarily have broad discretion to make decisions regarding parenting arrangements to suit the unique circumstances of each case. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006). We will not disturb a trial court's parenting arrangement unless its decision is based on a material error of law, is contrary to the preponderance of the evidence, or is against logic or reasoning. *Eldridge*, 42 S.W.3d at 85; *Birdwell v. Harris*, No. M2006-01919-COA-R3-JV, 2007 WL 4523119, at *6 (Tenn. Ct. App. Dec. 20, 2007); *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997).

It is well-established that, in order to modify a parenting plan to change the primary residential parent, the trial court must apply a two-part analysis: the court must find that "both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick*, 90 S.W.3d at 575. Tennessee Code Annotated section 36-6-101(a)(2)(B) is the relevant statutory provision as to what constitutes a material change of circumstance in the context of a custody change:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of

-3-

circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

As noted by the court in *Kendrick*, "'[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody.'" *Kendrick*, 90 S.W.3d at 570 (quoting *Blair v. Bandenhope*, 77 S.W.3d 137, 150 (Tenn. 2002)). There is a strong presumption in favor of the existing order, and the burden of proof is on the party seeking modification to establish that there has been a material change of circumstances. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 829 (Tenn. Ct. App. 1999). Several factors to consider when making this determination are whether the change occurred after the entry of the order to be modified, whether the asserted change was known or reasonably anticipated at the time of the original order's entry, and whether the change "'affects the child's well-being in a meaningful way.'" *Kendrick*, 90 S.W.3d at 570 (quoting *Blair*, 77 S.W.3d at 150). A material change in circumstances must be a change that affects the well-being of the child in a meaningful way. *Caldwell v. Hill*, 250 S.W.3d 865, 872 (Tenn. Ct. App. 2007). A change in the circumstances of one or both parents that has not been shown to affect the child does not constitute a material change in circumstances. *Buckles v. Riggs*, 106 S.W.3d 668, 674 (Tenn. Ct. App. 2003).

In this case, the trial court gave a list of eleven reasons to support its finding that there had been a material change in circumstances. We will examine each reason separately:

1. "The minor child was present when the Mother was the victim of domestic violence perpetrated on her by a former boyfriend of Mother." The basis cited by Father for this finding is the testimony of Cordelia Nwozo, a former employer of Mother. The actual testimony does not, however, support the conclusion:

 Q. Did [Mother] ever say anything to you about Annia being present while her boyfriend struck her?

A. She told me that–because I was like, okay, when will you finish at the police station so you can come cover this shift because I can't be here. . . . And she said, well, I don't know when this is going to end because this is an on-going problem. So, my understanding from my conversation with her, it's not the first time this is happening with the boyfriend. That, you know, he does beat her up.

-4-

Ms. Nwozo did not answer the question posed but explained the effect of the alleged abuse on Mother's work attendance. Neither Ms. Nwozo's testimony nor any other evidence established that Annia witnessed or was in any way affected by Mother's former boyfriend's abuse.

2. "The Mother took the minor child with her to work on several occasions." While Ms. Nwozo testified about two times when Mother brought Annia to work with her, there is nothing in the record to suggest that these incidents affected the child in a significant way. Such isolated incidents of bringing a child to one's place of work hardly constitute a basis for changing custody.

3. "The Mother had her former boss take care of the minor child while the Mother was working, and did not provide any snacks or food for the minor child." Ms. Nwozo testified that, on one occasion when Mother was scheduled to work as a nurse, Mother told Ms. Nwozo that she could not come because she had no one to care for her child. Ms. Nwozo offered to take care of the child if Mother brought her to the nursing home. Ms. Nwozo testified that the child came to her house without any food, so Ms. Nwozo had to feed her breakfast, lunch, and a snack. Again, there is nothing in the record to indicate that this incident had any material effect on the child. Mother's lack of child care and failure to send food with the child, while perhaps suggesting a lack of preparedness on that particular day, does not support a finding of a material change in circumstances affecting the child's well-being in a meaningful way.

4. "The Mother had numerous residential moves, at least five (5) to seven (7) times, since the entry of the prior Order." The evidence supports a finding that Mother moved five to seven times during the relevant time period (since August 2003). All of these moves were to places within the same county, and the child had attended the same elementary school since the second grade. She was in fifth grade at the time of the hearing. Once again, there is no evidence that Mother's residential moves had a negative impact on Annia.

5. "The minor child's several behavioral issues at school, on which the Mother was consulted, but no steps were taken by Mother to correct for a year. After one year the Mother testified that she changed her work schedule to correct the behavioral issues at school, but the Court finds that the behavioral issues continued. These behavioral issues include an in school suspension at Scales Elementary for bad behavior. The Mother testified that the minor child had behavior issues because of ADHD, but the Court makes no finding as to this, because no medical proof of diagnosis or medication was shown to the Court. The Court further finds when the Father was made aware of these problems by the schools, he attempted to communicate with the school to correct said problems."

There is no dispute that Annia had some behavioral problems in preschool and in the second and third grades. The evidence does not, however, support the court's statement that "no steps were taken by Mother to correct for a year." Mother's decision to change her work schedule, cited by the trial court, was in response to tardiness problems (discussed below), not to any behavioral issues. Medical records confirm that Mother took Annia to see a behavior specialist when she was in preschool, and Mother testified that the child received therapy from the behavior specialist. Mother also testified about steps she took at home to address the behavior problems exhibited by the child during grade school. Moreover, Annia's third grade teacher, Susan Menefee, testified that Mother came in to talk to her about the child's problems:

> Q. Now, did you have any problems working with the mother and talking to the mother about the child?
>
> A. No, I didn't have any problems. As a matter of fact, we worked out a discipline sheet that was supposed to go home every day and be signed by me and be signed by her mother. The trouble was for Annia to get it home and then back again. She seemed willing to work, you know, and do whatever was necessary.

Ms. Menefee stated that Father would often come to school to check on Annia's progress but was not involved in the behavioral plan since the child was living with Mother.

According to Mother and Ms. Menefee, Annia's behavioral problems were related to ADHD. The court gave little credibility to Mother's testimony and noted the lack of medical proof to confirm a diagnosis of ADHD. But Mother was not the only source of information about the child's ADHD. Ms. Menefee testified that the child took medication at the beginning of the school year, but the medication was discontinued. Because Ms. Menefee "could see a big difference" after Annia stopped the medication, she "assumed that—you know, that she was taking it for A.D.D." Ms. Menefee also observed the child's behavior to be like that of other students with ADHD. Ms. Menefee also talked to Annia's second grade teacher about the child's behavior issues.

The record does not support the trial court's conclusion that Mother failed to take timely action in response to Annia's behavior problems. By the time of the hearing, the child was no longer having behavioral problems, was making good grades, and seemed to be well-rounded and well-adjusted. The court emphasized that Father "attempted to communicate with the school to correct said [behavior] problems." But, as discussed above, Mother, too, was responsive to the child's needs.

6. "The minor child has had numerous tardies and unexcused absences from school over a several year period. The Mother testified that she was aware of these, but worked at nights, and the babysitter was taking the minor child to school in the morning. The Mother further admitted that she was responsible for the minor child's attendance at school. The Mother testified that she changed her work schedule to correct this problem, but it took the mother one year to do so, and after the Mother changed her work schedule, the minor child continued to have tardies and unexcused absences. The Court finds that the tardies and unexcused absences affect the minor child's performance and behavior in school, as well as disrupt the minor child's teacher and classmates."

Annia's tardiness problems are the most significant reason cited by the trial court to support its finding of a material change of circumstances. School records show that Annia was tardy an excessive number of days in first, second, and third grades.[1] In third grade, she was tardy 31 times without an excuse. Ms. Menefee testified that she discussed the tardiness problem with Mother and learned that the child was being transported to school by a babysitter. Mother testified that she changed her work schedule so that she could take the child to school. According to a report generated in early March 2010, during Annia's fourth grade year, she had only two unexcused tardies.

The evidence supports the trial court's findings concerning Annia's excessive tardiness[2] through the third grade, which is somewhat remote in time, but there is no evidence that the tardiness continued thereafter or that her tardiness adversely affected her schooling.

7. "The Mother acted inappropriately when she entered a different classroom at the minor child's pre-school, to confront the Father's wife, who was teaching at the time. Any and all allegations made by Mother against Father's wife are unfounded."

This finding concerns an incident when Mother allegedly entered the classroom of Father's wife at the child's preschool. Annia was not present in that classroom, and there is no evidence that this event had any effect on the child. Thus, this reason does not support the trial court's finding of a material change of circumstances.

8. "The Mother failed to inform the Father of the minor child's residential location and school location when the Mother moved residences with the minor child."

---

[1] A more detailed report available for Annia's second grade year shows that when she had an unexcused tardy, she arrived at school between 7:30 and 8:00 a.m.

[2] The child's school records do not show excessive unexcused absences.

The evidence on this point consists of the conflicting testimony of Mother and Father. Since the court found Father to be a more credible witness than Mother, we defer to the trial court's determination.[3]

9. "The Mother interfered with Father being able to timely pay medical bills of the minor child."

Since there is no evidence to even suggest that any interference with Father's payment of medical bills had any effect on Annia, this reason does not support the trial court's conclusion.

10. "The Mother did not provide the minor child's school with a current and valid [order] which identified the Father's relationship and rights with said school."

There is nothing in the record to put the responsibility on Mother to provide the school with information about Father's rights. This reason does not support the trial court's analysis.

11. "The Mother deliberately interfered with the Father's relationship with the minor child."

Interference with the parent-child relationship is an important factor for courts to consider in making custody modification decisions, but the trial court did not cite any specific instances of such interference. We must, therefore, review the record to determine where the preponderance of the evidence lies.

Father's wife, Sonya J., testified and presented a visitation log about instances when she and Father "attempted to get Annia and weren't able to get her for whatever reason." These instances occurred when Father's parenting time was to be arranged by agreement of the parties. Ms. J. also testified that Father attended many of Annia's extracurricular events, "everything that he was informed of by [Mother]," and that Mother invited Father to attend a father-daughter dance with Annia.

Father testified that, after the August 2003 order whereby visitation was by agreement of the parties, there was a period of time when he had Annia every other weekend and Tuesday and Wednesday nights during the week. But, after he obtained a reduction in child

---

[3]While we defer to a trial court's assessment of witness credibility, we must note that the trial court's credibility determination in this case hinged largely on Mother's actions before the entry of the last order regarding visitation in August 2003.

support based upon spending increased time with the child, Mother stopped being cooperative and he was able to see Annia "about once every two months maybe." Father testified that after the referee entered his order [in August 2009], he did not request weekend visits because he did not know whether he was entitled to have that time. He stated that he had Annia from Christmas Eve [2009] through around December 30 and that the child went to Father's sister's house during her fall break.

Mother testified that when visitation was by agreement of the parties, she tried to accommodate Father; there were a few times when she denied Father's request for visitation because she already had other plans. According to Mother, Father sometimes did not ask for a visit for three or four months at a time. It was her understanding that, after the referee's decision, the parties were operating under the every-other-weekend schedule. In her view, Father could have visitation with the child every other weekend whenever his work schedule would allow him to do so.

There is some conflict in the testimony of the two parties as to the history of the Father's visitation with the child. The trial court's conclusion that Mother deliberately interfered with Father's relationship with the child rests to some degree upon its assessment of the relative credibility of the parties, an assessment to which we must give deference. The parties' disagreements also stemmed from the "by agreement" visitation order entered in August 2003. At times, the parties were operating under different understandings of the relevant court orders, and they often failed to communicate effectively with one another.

Having reviewed the eleven reasons cited by the trial court to support its conclusion that there was a material change of circumstances, we find that most of these reasons are not supported by the preponderance of the evidence or reflect the trial court's failure to apply the correct legal standard (under which only changes having a substantial effect on the well-being of the child are considered material). We, therefore, reverse the trial court's decision to modify custody. In light of this conclusion, the remaining issues need not be addressed.

CONCLUSION

The judgment of the trial court is reversed. Costs of appeal are assessed against Father, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE